[No. 7947.]

## GARCIA V. THE PEOPLE.

1. NEW TRIAL—*Newly Discovered Evidence—Cumulative.* Information for wilful murder. The prisoner was an ignorant Mexican, without money or friends. He had been but a short time in the county. Counsel assigned to his defense were able to confer with him only through an interpreter. They were not able to obtain any intelligible information as to his family, past life, or the facts leading up to the homicide. In attempting to establish

his insanity counsel were limited to evidence of incoherent conversations, and peculiar actions, during the short stay of the prisoner in the county. An application for a new trial was supported by affidavits showing that for more than five years the prisoner had been subject to occasional periods of frenzy, attributable to a fracture of the skull; that upon these occasions he was entirely irresponsible; that he had even attempted the life of members of his own family. *Held,* that though the prisoner's mental condition was a subject of inquiry upon the trial, inasmuch as nothing was shown, or attempted, as to the cause of his insanity, or the injury mentioned and relied upon in the motion, the newly discovered evidence was not cumulative, in such sense as to warrant its exclusion; and as it might have produced a different result, the motion should have been granted. (436-438.)

2. EVIDENCE—*Res Gestae—Information for Murder.* The prisoner had, shortly before the homicide, assaulted and stabbed, one Kelley. The deceased, a police officer, was pursuing, and attempting to arrest him. Evidence as to a difficulty and altercation with Kelley, shortly previous to the assault upon him, the fact of the assault, and the prisoner's attempt to escape, were part of the *res gestae,* and as such, admissible. (438, 439.)

Testimony as to the sufferings of Kelley, from the wound given him, held inadmissible. (439.)

*Error to Larimer District Court.* Hon. NEIL F. GRAHAM, Judge.

Mr. H. I. GARBUTT, for plaintiff in error.

Hon. FRED FARRAR, attorney general, Mr. CLARENCE M. HAWKINS, assistant attorney general, for The People.

HILL, J., delivered the opinion of the court.

The plaintiff in error Lauro Garcia, hereafter designated as the defendant, was convicted of murder in the first degree. The jury fixed his penalty at death. The deceased, C. E. Brockman, was a police officer of the City of Fort Collins, and it stands admitted that the shot fired by the defendant was the cause of his death. One of the defenses interposed was insanity. The motion for a new trial sets forth newly discovered evidence alleged not to be cumulative of that offered along the lines the defense had been conducted, but of a separate nature, of a distinct material fact, unknown to counsel at the time of the trial, and

which, according to the showing made, which included diligence, could not have been ascertained by him at that time, upon account of the alleged mental condition of the defendant.

The record discloses, that after the defendant's arrest, upon investigation, it was ascertained that he was without means with which to employ counsel, or even friends so far as then known, to aid him in this respect; that on March 20th, his present counsel was appointed to represent him; that the trial was set for April 1st following; that the jury returned its verdict April 5th; that the defendant was an illiterate Mexican; that all communications with him had to be through an interpreter; that upon account of his mental condition he could not, and if that is not correct, as alleged, then for some reason he would not, give to his counsel any intelligent information concerning his past life, people, etc., or concerning the real facts leading up to the commission of the crime. His testimony at the trial consisted of illogical, irresponsive rambling statements, which threw very little light, if any, upon the facts. The evidence to establish his insanity was, and upon account of the foregoing facts his counsel urge, of necessity, had to be, limited to such as counsel was able to secure in Larimer county concerning his incoherent conversations, peculiar actions, illusions, etc., for a short time preceding the trial, during which period he had been in that county. The People's evidence covered the same line, but included the opinions of physicians based thereon, and gathered from their conversations with him, etc.

The motion discloses, that after his conviction, his counsel succeeded in ascertaining that some time prior thereto, at his former home near Pascuales, Mexico, he had been thrown from a horse; that if granted a new trial he would be able to secure the attendance of witnesses and show this fact, and that upon account of it he had for more than six years suffered with violent attacks of insanity, at

which times he was not responsible for his acts; that these attacks are due to the fracture of his skull caused by this fall from a horse. This showing discloses, that most of the proposed witnesses, who the defendant alleges he can produce at a new trial, had known him from childhood and that, in their opinions, since he had this fall from the horse he had not been altogether mentally sound; that he had even attempted the life of members of his own family; that at times he is in his right mind, or almost so, but that generally he is not; that when in his right mind or as nearly so as he ever gets, he feels very badly about his actions, apologizes, etc.; that the cause of his insanity is due to his injuries received by the fall from a horse, etc.

This showing of these alleged facts was in no way contradicted, but it is claimed, that as evidence was introduced at the trial concerning the defendant's sanity, they are but cumulative, hence under the well known rule are not sufficient. If this proposed testimony was limited to the same class and line of facts as those covered at the trial, this position would, of course, be well taken, but such is not the case. 'Tis true, the defendant's sanity was gone into, and evidence was offered concerning his actions, etc., but such was not the case as to any cause for his alleged insanity. So far as the record discloses nothing was shown concerning any cause for insanity, or of any alleged accident to the defendant which caused an injury to his skull, which it is claimed were the causes of his condition. Part of this proposed testimony referred to these separate independent facts.

In Thompson on Trials (2nd ed.), vol. 2, section 2762, in referring to the kind of newly discovered evidence which will warrant a new trial, it is said, "that such evidence will tend to prove facts, which were not directly in issue on the former trial, or were not then known or investigated by proof, or that it will produce a different result at a second trial." These declarations are applicable here. The mate-

rial part of this proposed testimony pertains to new matters that had not been testified to, nor disputed by any witness who testified at the trial. While in a sense they were cumulative concerning his insanity, they were not cumulative to anything which had been testified to pertaining to the cause of his insanity, for which reason it was a new matter to this extent, as this question had not been gone into. It was material to the defense of insanity, and if shown it might produce a different result at a second trial. For these reasons, upon the showing made, we think it was prejudicial error to overrule the motion. This necessitates a reversal.

In view of a new trial we deem it necessary to consider one other assignment. The shooting of the officer occurred in the evening. It appears, that a short time prior thereto the defendant was in the second story of a hotel at Fort Collins, where he once occupied a room; that a Mr. Kelley ordered him therefrom; that a little later he again returned to the second story of this hotel, and was, by Mr. Kelley, in the presence of others, again ordered therefrom, at which time he, Kelley, used violent and abusive language towards the defendant; that he left the building, and within an hour or so thereafter, which was after dark, stood in the doorway of some kind of a business building, where he could not readily be seen by those passing on that side of the street; that when Kelley and another man came along, he stepped out and commenced to stab Mr. Kelley, who ran a short distance and fell; that the defendant was following him; that when Kelley fell the defendant turned and ran away with several bystanders, and ultimately the officer, in pursuit; that he failed to heed the warnings to stop until another Mexican called to him in the Spanish language to stop, after which he did so, turned around and faced the officer with gun in hand; that they both fired, his shot resulting in the officer's death; that he again ran away, and escaped arrest until the next day. It is claimed that the court erred in allowing the witness, Kelley, as well as his physician, to

testify concerning the permanent effect of the injuries to Kelley resulting from the knife wounds, as well as to the extent of his suffering occasioned thereby, also in allowing Kelley's clothing and wounds to be displayed before the jury. The testimony, concerning the transaction at the time, and what was done by the defendant, was relevant as bearing upon the cause for the shooting of the officer; it was properly admitted as a part of the *res gestae*. *People v. Wright,* 89 Mich. 70, 50 N. W. 792; *People v. Smith,* 106 Cal. 73, 39 Pac. 40; *Glory v. State,* 13 Ark. 236; *People v. Marble,* 38 Mich. 117; *Hickam v. People,* 137 Ill. 75, 27 N. E. 88; *Wilkerson v. State,* 31 Tex. Cr. R. 86, 19 S. W. 903; *People v. Pallister,* 138 N. Y. 601, 33 N. E. 741.

The testimony pertaining to certain matters transpiring afterwards, viz., the ultimate result of Mr. Kelley's injuries as well as his subsequent suffering was not competent. It was no part of the *res gestae;* it could have no bearing up on the case and might prejudice the defendant in the eyes of the jury. He was not being tried for the stabbing of Mr. Kelley, hence, the permanent effect of his injuries ascertained a long time thereafter and his suffering after the homicide, were no part of the *res gestae* and should not have been admitted. *Herren v. People,* 28 Colo. 23, 62 Pac. 833; *Salas v. People,* 51 Colo. 461, 118 Pac. 992, 37 L. R. A. (N. S.) 252; *Farris v. People,* 129 Ill. 521, 21 N. E. 821, 4 L. R. A. 582, 16 Am. St. Rep. 283

The judgment is reversed and the cause remanded for a new trial

*Reversed.*

Decision *en banc.*

GABBERT, C. J., WHITE, J. and GARRIGUES, J., dissent.