Hillsborough, }
Feb. 1, 1938. }

STATE *v.* ROMAN W. SLOCINSKI.

*Thomas P. Cheney*, Attorney-General, *Frank R. Kenison*, Assistant Attorney-General, and *Jennie Blanche Newhall* (*Mr. Kenison* orally), for the State.

*Osgood & Osgood* (*Mr. Anson G. Osgood* orally), for the defendant.

ALLEN, C. J. I. A church society owned the property burned, subject to mortgages on it amounting to $4,620. The defendant had extensive control over the finances of the society, and was "accountable only in equity for any default." The property carried $9,000 of fire insurance. The defendant was personally in debt to a substantial amount. The State claimed that he set the fire to obtain part of the insurance money, and was allowed to introduce evidence that he made a payment towards the unpaid premiums for the insurance the day before the fire.

The evidence was competent on the issue of motive. It tended to show that the insurance was a matter of thought and attention immediately before the fire. The fact that the insurance was then already in force did not make the evidence irrelevant. It would be natural for the defendant to consider the insurance more secure with payment for it made, although in fact no gain in the security was thereby made. The evidence tended to show a step in his plan thought by him to be of possible service to meet any claim that the insurance was not in good standing.

II. In denial of motive the defendant took the position that for him to benefit from the fire a total fire loss was necessary. Evidence that the property was in an area where other fires had resulted only in partial losses was properly excluded on the ground of remoteness. As the trial justice observed, it opened up many things and "would be quite far afield." Moreover, it was conjectural whether the defendant was aware of the experience in the area that none of its fires were of total loss. And furthermore, the insurance of $9,000 was payable in case of loss to meet the mortgage indebtedness only to the extent of $2,500.

III. A witness testified to a threat by the defendant to burn the property in a talk with him nearly a year before the fire. Subject

to exception, the witness was then permitted to testify that after the defendant's arrest for setting the fire he informed the police of the threat. The exception was on the ground that the evidence was incompetent, prejudicial and hearsay, and was "a self-justification before any attack is made on the witness' credibility." The evidence was offered on the stated ground that it would show "the circumstances by which this information" of the threat "was obtained" by the police. Except as the charge may have limited its use, it was in the case with no restriction of use.

It is not clear whether the reason advanced at the trial by the County Solicitor for introducing the testimony implied its bearing on any issue other than that of the collateral one of the credibility of the witness. If it did, no competency for it on any other issue is perceived, and none has been argued in behalf of the State. The manner in which information of the threat came to the police is irrelevant. Explanation how the witness was found served no purpose in any way, as long as no claim was asserted of impropriety which led to producing him. As the matter stood, no suspicion could be thrown upon his presence as a witness. His presence and testimony could not, alone, indicate discreditable methods on the part of the prosecution or its agencies. There was no occasion to show that in calling the witness their hands were clean. They did not stand otherwise, even doubtfully. The testimony of the threat was materially helpful on the issue of malice, but the importance of the testimony invoked no inference of a lack of integrity in presenting it.

Upon the assumption that the testimony excepted to was received to show the truth of the witness' direct evidence of the threat, the general rule is that extra-judicial statements of a witness to the same effect as his testimony are not competent evidence on the issue of the truth of his testimony, unless to combat impeaching evidence of statements inconsistent with the testimony. ". . . his testimony under oath would have gained no legal corroboration from his having said the same thing when not sworn and not subject to cross-examination." *Burns* v. *Stuart*, 168 Mass. 19. The rule is so strongly established as to be almost axiomatic and is so firmly established as usually to be taken for granted. It received terse approval in *Barker* v. *Barker*, 16 N. H. 333, 339, in this language: "nor did he . . . bring himself within any exception to that general rule which precludes a party from supporting his cause by giving evidence of his own sayings." While the reference is to a party's testimony, the reasoning extends to that of any witness, as appears in *State* v. *Wink-*

*ley*, 14 N. H. 480, 493, where it is said: ". . . when the credit of a witness has been impeached by proof that in a certain conversation he has made statements inconsistent with the truth of his testimony, he may on his reëxamination state what that conversation was . . . This view of the case, and it appears to us to be a sound one, avoids the objection which exists to proving that the witness has made statements at other times similar to his testimony, and thus fortifying his testimony by his declarations made out of court." A rule admitting prior statements consistent with the testimony before any impeachment "is rejected in all Courts." Wigmore, Ev., (2d. *ed.*), *s.* 1124. The reasons for the rule, to exclude untested evidence of slight probative value, to avoid issues respecting such evidence, and to lessen the chances of false testimony, have such practical merit of expediency as fully to justify the uniform authority for it.

If it may be said that the witness was impeached in his direct testimony which tended to show bias and prejudice against the defendant as a delinquent debtor of the witness' mother-in-law, yet the report of the threat to the police would tend to substantiate the prejudice more than to disprove it and would be of no logical service to indicate the truth of the testimony of the threat.

The suggestion that the testimony of the witness was admissible "as assuring himself and the jury that his memory is accurate," does not invite acceptance. It clearly did not become competent under the principle by which evidence to refresh recollection may be received, because occasion to apply the principle was lacking. The witness testified positively to the threat, with no intimation of a doubtful memory needing to be stimulated or developed. His memory about the matter was clear.

Nor was it competent to explain why he clearly remembered the threat. The rule that "On the *direct examination* a witness may properly be asked to specify the grounds for his recollection" (Wigmore, Ev., (2d. *ed.*), *s.* 730), is not questioned. But the witness here was not asked what made his recollection of the threat clear and definite. No inference that his information to the police assisted him in fixing the threat in his memory may properly be drawn. So far as his testimony goes, the information he gave was of no support to recall the incident of which he informed. To infer confirmation of memory from a mere instance of its exercise would disregard rational methods of deduction.

Moreover, while evidence of strength and accuracy of memory may be introduced to give belief or add to the impression of belief

to the truth of testimony, the evidence must be logically relevant, and also must be measured in value with the opposing rule excluding self-sustaining assertions on direct examination. If it may be granted that in the mnemonic process narration of an occurrence may clarify and confirm the memory of the occurrence, yet in practical expediency in a judicial trial the explanation of a good memory is ordinarily required to be of direct evidence of some event or incident closely allied in time and occasion to the matter the memory of which is under appraisal. 28 R. C. L. 648; 41 L. R. A. (N.S.), Anno., 928. If a narration outside the trial may ever be competent evidence to show the quality of the witness' memory of the matter narrated, one made as here, disconnectedly with the event testified to and long subsequent to it, induces or fortifies belief in the testimony so slightly and is so heavily laden with prejudice as a self-supporting assertion that its introduction is more injurious than helpful in the search for truth. The narration is not direct evidence of its truth and is therefore to be considered in the light of the undue prejudice rule. *Bunten* v. *Davis*, 82 N. H. 304, 311.

Assuming that the evidence was received only upon the collateral issue of memory and that the jury were instructed to use it for no other purpose, its faint light for proper use and the natural difficulty of the jurors' minds not to use it improperly defeated its competency as a matter of law. Even from the standpoint of the trial court's discretionary authority, it could not be admitted in sound discretion. Its remoteness to show good memory and its prejudice as a conformity with the direct testimony are, taken together, too insistent to sustain a finding of permissible use.

But evidence of conduct consistent with and conformable to testimony about an occurrence may be received to corroborate the testimony and thus help to induce belief in its truth. It is circumstantial evidence tending to support the testimony. In this view the significant fact here is, not that the witness made an extra-judicial statement to the same effect as his testimony, but that, having knowledge which might be of service to the prosecuting authorities, he disclosed it to them upon learning of the defendant's arrest. Such conduct furnished a circumstantial support of the truth of his testimony. It indicated that he acted properly and normally, as one would be expected to when having the information to which he testified as his personal knowledge.

While the evidence, as a collateral matter of conduct, was admissible in the trial court's discretion upon the questions of remoteness

and undue prejudice, it is not to be said that the discretion was improperly exercised. The testimony which the evidence supported related to an important feature of the case, and the evidence, as of conduct confirmatory of the testimony, was of sufficient impressiveness to entitle it to discretionary admission. The implied findings that it was not too remote or unduly prejudicial were reasonably made.

The exception is overruled.

IV. The defendant was a priest claiming to have taken vows of celibacy. A photograph was admitted in evidence as tending to show that he had at one time married. It was later withdrawn and the jury were instructed to disregard all reference to it. It is assumed that the instruction was observed (*Watkins* v. *Railroad*, 84 N. H. 124, 128, and cases cited), and the various exceptions in connection with it are overruled.

V. The exception to the allowance of argument likewise is overruled. It relates merely to a misstatement of evidence by counsel, who stated to the jury that he left it to their recollection what the actual evidence was, without taking his version of it. There is no suggestion that counsel intentionally or insincerely made the misstatement, and it is to be assumed that the jury gave no consideration to it. The court's allowance of the argument is construed, not as implying that counsel correctly stated the evidence, but as permitting its consideration only if the jury's independent recollection was the same as that of counsel.

*Exceptions overruled.*

All concurred.

---

ON REHEARING. After the foregoing opinion was filed the defendant moved for a rehearing.

*Osgood & Osgood*, for the motion.

ALLEN, C. J. I. The witness who testified to a threat by the defendant and was then permitted to testify that he later reported the threat to the police, was also allowed to testify that he first reported the threat to his lawyer after the defendant's arrest and that he gave

the report to the police as the result of his lawyer's advice. The motion presents the claim that the evidence of telling the lawyer what the defendant said to him was incompetent, although the evidence of the report to the police is held competent.

The evidence of the report to the lawyer was competent on the same ground as that of the report to the police. Like the latter report, it was an incident, proof of which helped to verify the direct evidence of the threat. It was a proper and normal course to take that the witness should bring the threat to his lawyer's attention in discussion about the defendant's arrest. Disclosure of his knowledge to his lawyer and acting on the advice he received to inform the police of the threat were so directly connected with the report to the police that they formed a part of the entire incident. Both in that aspect and as a distinct matter the evidence of disclosure to the lawyer was as competent as that of informing the police. As conduct of circumstantial character it had some tendency to prove the truth of his direct evidence of the threat.

II. Since the jury presumably acted on the court's instructions and hence presumably disregarded the misstatement of the evidence, the conclusion follows that no unfairness of trial probably resulted from the misstatement. It follows that a finding of fairness is unnecessary. The State had no burden to show that the jury's duty was performed when non-performance was only conjectural.

*Former result affirmed.*

All concurred.