Hillsborough, }
Dec. 5, 1939. } No. 3098.

EMANUEL BALLAS *v.* F. W. WOOLWORTH COMPANY.

JASIMINE BALLAS *v.* SAME.

EMANUEL BALLAS *v.* H. P. HOOD & SONS, INC.

JASIMINE BALLAS *v.* SAME.

*Sullivan, Dolan & Dudley (Mr. Dolan orally)*, for the plaintiffs.

*Wyman, Starr, Booth, Wadleigh & Langdell (Mr. Booth orally)*, for F. W. Woolworth Company.

*Alvin A. Lucier*, for H. P. Hood & Sons, Inc.

WOODBURY, J. At the oral argument before us the plaintiffs expressly waived their exceptions to the orders of nonsuit in their actions against H. P. Hood & Sons, Inc., and it follows that this defendant is now entitled to judgment in both actions.

With respect to the Woolworth Company, which for convenience will be referred to hereafter as the defendant, the plaintiffs contend that as a purveyor of food it owed to Jasimine a duty to use due care to see that the food which it served was fit to eat (*Kenney* v. *Len*, 81 N. H. 427), and that the presence of the splinter of glass in the ice cream was findably due to its negligence. The defendant does not deny that it owed to the plaintiff as a customer a duty to use due care to see that harmful foreign substances were not in the food which it served, nor does it question the sufficiency of the evidence to sustain a finding that the splinter of glass which injured the plaintiff was in the ice cream when it was served to her, but it takes the position that there is nothing in the evidence to indicate that the glass entered the ice cream while in its possession rather than while being either manufactured or delivered by the Hood Company, and hence that any verdict against it would be bad because based upon guess or conjecture. *Deschenes* v. *Railroad*, 69 N. H. 285; *Ingerson* v. *Railway*, 79 N. H. 154; *Russell* v. *Railroad*, 83 N. H. 246; *Ahern* v. *Company*, 88 N. H. 287.

This contention is answered by the testimony of the manager of the Hood Company's local plant. This witness testified that no glass of any description had been in use around that plant for four years preceding the date of the plaintiff's injury, and that the methods of manufacture and delivery then employed were such as to prevent the entrance of glass into the product. In greater detail, he said that all the ingredients from which its ice cream was then made were passed through fine metal screens into a machine in which the entire cooling and freezing process was carried on, and that this machine, which contained no glass, was so designed that human contact with its contents was impossible from the time the ingredients entered it until the ice cream was poured from the freezing unit. He also testified that the ice cream was poured from this freezing unit directly into metal containers which had previously been steam cleaned and inspected for foreign substances and that these containers were then promptly covered with a parchment paper cap and a metal cover neither of which was removed until after delivery to the purchaser.

This evidence, while it may fall short of conclusive proof that the glass which injured the plaintiff did not enter the ice cream during the process of manufacturing and delivery (*Minutilla* v. *Company*, 50 R. I. 43; *Richenbacher* v. *Corporation*, 250 Mass. 198), is certainly sufficient to warrant a finding of fact by the jury to that effect. And, if the jury should so find and if they should also believe the plaintiff's testimony that the piece of glass which injured her was in the ice cream when it was served to her by the defendant, then it would be a logical and hence a permitted inference that the glass entered the ice cream while it was in the possession of the defendant and under the control of its servants. This evidence of careful production by the manufacturer distinguishes the case at bar from *Ash* v. *Company*, 231 Mass. 86, and *O'Brien* v. *Company*, 255 Mass. 553, upon which the defendant relies.

The defendant also contends that the splinter of glass which injured the plaintiff could not in reason be found to have entered the ice cream at its fountain because that splinter was dissimilar to any glass in use there at the time of her injury. This contention is based upon the testimony of some of the defendant's employees. These witnesses, after describing the physical characteristics of the splinter as "thin, clear, white glass, tapered down to a point" and about three quarters of an inch long, and again as a "straight flat piece," "straight on one end, curved on the other," said, to quote the words of one of them, "The glass didn't coincide with any glass

on the counter," and, in the words of another, "It was perfectly flat, and not shaped like a piece of glass that would come from a tumbler." There was evidence that at the time when the plaintiff was injured the defendant was serving coca cola in tumblers of thin, clear, white glass and that these tumblers were occasionally broken.

The testimony of these witnesses as to their opinions regarding the origin of the glass which injured the plaintiff, although admissible under our liberal rule respecting such evidence, is not controlling, (*Stevens* v. *Insurance Co.*, 84 N. H. 275, 280), and furthermore, a jury might give it but little weight not only because it came from the defendant's employees, but also because the opinions themselves are based upon the flatness of the splinter and fail to take into consideration the fact that the bottom of a tumbler is flat. Disregarding this opinion evidence there remains in the case the evidence of the physical characteristics both of the splinter and of the glass from which coca cola glasses are made, and we cannot say that these characteristics are so dissimilar as to compel as a matter of law a finding that the splinter could not have come from one of them. This evidence, although circumstantial, is not without persuasive force. *Saad* v. *Papageorge*, 82 N. H. 294; *State* v. *Thorp*, 86 N. H. 501, 510; 1 Wigmore, Evidence (2d. *ed.*) *s.* 26.

The defendant further contends that the evidence that no glass had been broken at the soda fountain for several hours before the plaintiff was injured, and the evidence that vanilla ice cream was being rapidly dispensed at and just prior to the time when the plaintiff was injured, conclusively establishes that the glass did not enter the ice cream upon the defendant's premises. This contention is without merit for the reason that the container was delivered to the defendant on the day before the injury and it does not appear how long it had been at the fountain or how nearly empty it was when the plaintiff was served from it. Considering the rate of consumption of vanilla ice cream which this evidence indicates and the fact that several servings could have been taken from the container without necessarily picking up the splinter of glass contained in the plaintiff's serving, we cannot say that the splinter could not have been in the container behind the defendant's fountain for some substantial period of time before being disturbed.

It is not sufficient to fasten liability upon the defendant, however, to show only that the glass became embedded in the ice cream while it was upon the defendant's premises and under the control of its servants. To make out a case the plaintiff must go further and

adduce either some direct evidence or some evidence from which a proper inference might be drawn to the effect that the presence of the splinter of glass in the ice cream was due to some negligence on the part of either the defendant or its servants.

The plaintiffs do not contend that a finding of the defendant's negligence may be predicated, as in *Kenney* v. *Len*, 81 N. H. 427, upon a finding of failure to establish and maintain a system of inspection of the ice cream adequate to detect the presence in it of a substance like glass. Their contention is that the defendant was negligent in that it operated a soda fountain of defective design.

It appears that the defendant's fountain is about seventy-five feet in length. Behind it near one end is a sink at which glasses are washed, and not infrequently broken, and about three feet from this sink is located the refrigerated box in which ice cream is stored. Containers of ice cream as they come from the manufacturer, but with his covers removed, are placed in individual compartments in this box and each compartment is capped with an individual metal cover which is removed only while ice cream is being scooped out by the person serving it. The compartment in which vanilla ice cream is kept is on the end of the refrigerator box nearest the sink, and between the sink and the ice cream box is a machine for rinsing glasses and a rack for storing them.

Considering the probability of breakage while glasses are being washed, rinsed and stored, the tendency of splinters to fly, sometimes for considerable distances, when glasses are broken, the serious danger incident to the presence of broken glass in food and the difficulty in detecting a substance like glass in a food like ice cream, we cannot say that reasonable men must conclude that due care required no greater precautions than those taken by the defendant. It might have stored its ice cream further away from a place where breakage of glass was likely to occur or it might have interposed a screen between the storage box and the rest of the fountain and by so doing have materially reduced the chance that flying splinters of glass would either fall directly into a temporarily uncovered container of ice cream or else fall onto the top of the refrigerator box where they might inadvertently be brushed into a container when its cover was removed. Under the circumstances disclosed it is for the jury to say whether or not the defendant did all that ordinary men of average prudence would have done to prevent the entry of glass into the ice cream which it served to its customers.

In substance, then, the plaintiff's evidence indicates, first, that the

glass which injured her probably did not get into the ice cream served to her by the defendant at any other place than upon its premises, and, second, that these premises were so designed that there was substantial reason to anticipate that glass might enter the ice cream stored there for sale to customers. This evidence, while it does not establish with absolute certainty that the glass did enter the ice cream due to the defendant's negligence, still is sufficient to take the plaintiffs' cases to the jury because, aside from that negligence, there is no evidence of any other equally probable cause for the presence of the glass in the food which Jasimine ate. *Boucher* v. *Larochelle*, 74 N. H. 433; *Upton* v. *Company*, 81 N. H. 489, 492, and cases cited; *Saad* v. *Papageorge*, 82 N. H. 294; *Harmon* v. *Richardson*, 88 N. H. 312; *Emery* v. *Company*, 89 N. H. 165. It follows that the defendant's motions for nonsuits were erroneously granted as to the counts in case for negligence.

The actions appear to have been tried solely upon these counts in case, and the plaintiffs' exceptions to the orders of nonsuit on their counts in assumpsit for breach of warranty have been neither briefed nor argued by counsel for either side. These circumstances are sufficient to warrant the assumption by us that the plaintiffs have waived their exceptions in so far as these counts are concerned, but, even if this were not so, we should still think it inadvisable to consider the disputed question which these exceptions raise, (see 4 Williston, Contracts (*Rev. ed.*) *s*. 996A; 22 Am. Jur., Food, *s*. 101) until it has received adequate presentation by counsel.

*New trials in the actions against the Woolworth Company: judgments for the defendant in the actions against the Hood Company.*

All concurred.