STATE *v.* ELLEN LOUISE WHITE.

*Thomas P. Cheney*, Attorney-General, *Burnham B. Davis*, County Solicitor, and *Frank R. Kenison*, Assistant Attorney-General (*Mr. Kenison* orally), for the State.

*Sullivan & Dolan (Mr. Dolan* orally), for the defendant.

WOODBURY, J. The defendant's motions that she be discharged and her motion that the verdicts be set aside raise the question of the sufficiency of the evidence to warrant the finding of her guilt

beyond a reasonable doubt. They may conveniently be considered together.

The evidence is that the defendant, in 1925, purchased a small house and lot in Sandwich for the purpose of summer occupancy, and that every summer thereafter until the fires therein for which she was indicted, she so occupied it. During the first years of her occupancy she made extensive repairs and alterations including papering and painting, repairing the roof, the removal of an old barn and the erection in its place of a detached two-stall garage, the installation of a water system and the re-grading and improvement of the grounds.

On September 19, 1938, she closed her house for the season and locked it, taking one set of keys with her and leaving, as she testified, the only other set in existence locked up inside the house. She drove her car to Manchester where she left it in a public garage and then went on to a hotel in Boston.

Late in the afternoon of September 22, one Joyce, who occasionally worked for the defendant and in whose general charge the premises were left during the defendant's absences from Sandwich, noticed smoke rising from the chimney of the house and seeping through the shingles on the roof. At the time he with his son was at work in the yard cutting up a large tree which had been felled by the high wind or hurricane of the evening before. There being no telephone service as a result of this storm, he asked a neighbor who chanced to pass in his car to find and notify the chief of the local fire department. The neighbor complied and the fire chief responded. When he arrived they examined the premises but could find no means of entry except by force. While making this examination they noticed through a cellar window sparks and fire falling from the ground floor into the cellar. The fire department was sent for and at once responded with its equipment, and Joyce, at the request of the fire chief, forced an entrance into the building through a ground floor window. The house was full of smoke but the firemen entered and easily extinguished a small fire found burning in a ground-floor closet. This fire was in some kerosene soaked excelsior, but due to lack of ventilation it had done little damage beside burning a hole in the floor through which had fallen the sparks and embers seen by the chief of the fire department. In another closet, near by, traces were found of another similar fire, but it had gone out by suffocation before doing anything more than smoke damage. After extinguishing the blaze and inspecting the premises for other fires, Joyce closed

and fastened a door leading from the house onto the piazza, which had been opened by firemen in the course of their work, and replaced and nailed over it a storm door. The firemen and the crowd of spectators which had been attracted to the scene then dispersed.

Two days later on September 24, at some time between ten and eleven o'clock in the evening, the testimony as to the exact time is conflicting, two more fires were discovered in the defendant's buildings. One was in some rags which had been soaked with kerosene and placed between the door and storm door which had been opened at the time of the previous fire, and the other was in a box of excelsior and other inflammable material in a corner of the garage. The firemen again responded and put out the fires before much damage had been done. Again they found the buildings securely locked and again they were compelled to force an entrance into the house, and this time into the garage also, in order to do their work. The storm door behind which there was fire was found securely fastened with nails and screws. The evidence was conflicting as to whether the door behind it was nailed or only fastened on the inside with its lock and bolt.

The evidence is also conflicting as to the movements of the defendant on September 22, and 24. The State introduced the testimony of several witnesses who said that they had seen her in her car in the vicinity of Sandwich on the 22d at or near the time when the fire occurred in her buildings on that date. She denies that she was anywhere in New Hampshire on that date, contending that she was in Boston all of that day and that during the afternoon and evening she was ill in her room in a hotel. She admits, however, that she was in Sandwich at her house on September 24th at the time when the fires on that date were discovered. She says that on that date she left Boston with a friend in the latter's car (the friend corroborates this), and drove to the Carpenter Hotel in Manchester arriving there, as her friend testified, at about six or six-thirty o'clock in the evening. The friend then drove on to Sandwich. The defendant says that at first she thought she would stay in the hotel in Manchester over night, but finding that her car had not yet been put in storage for the winter, and being anxious to see for herself what damage had been done to her property by the hurricane of September 21st, and the fire of the 22d, of which she had been informed, she finally decided to drive on that night. She says that she left Manchester for Sandwich at eight or eight-thirty that evening but this testimony is not corroborated.

She testified that when she arrived at her house in Sandwich she saw sparks coming from the side door and, leaving her car on the paved road in front of her house, she ran up to investigate. As she did so she says that she saw a person, whom she could not identify or describe even as to sex, run across the yard to an unpaved side road beside her premises and then heard the starting of an automobile engine. She then ran back to her own car, started it, and attempted with it to block the entrance of the dirt road onto the paved one. In this attempt she was not successful, but she says that the unknown car collided with hers damaging its left front fender and bumper, to which her license plate was attached, and then sped away without lights. She could not identify or describe this other car and she did not see its license plate.

The State agrees that the defendant drove from Boston to Sandwich on September 24 substantially as she says that she did, but contends that she arrived at her destination considerably earlier than she admits, and introduced evidence of times, distances and road conditions to show that such earlier arrival was easy provided she left Manchester soon after she arrived there and possible even if she left at eight-thirty as she testified. Its position is that the defendant arrived in ample season to set the fires in the house and garage of September 24, for which she was indicted and of which she was found guilty, and that after setting them she ran across the yard to the side road where she had parked her car, started it and attempted to leave the scene, but in her haste failed to negotiate the right angle turn where the dirt road enters the paved one and ran into a fence along the opposite side of this paved road across from her house. To substantiate this claim the State introduced evidence of tracks of a woman's shoes leading from the house across the yard to the dirt road, of finding near these tracks a woman's hat similar to one worn that day by the defendant when she left Boston but not worn by her after the fire, of tire marks on the dirt road leading towards its junction with the paved one similar to those made by a tire on the defendant's car, of an impression or imprint of parts of the last three numerals of the defendant's license number in a soft-wood rail of the fence with which it is contended she collided, of automobile tracks in that vicinity, and that the position of her car after the fire was discovered and also the damage to it were consistent with this theory of the case. Evidence was also introduced that traces of spilled kerosene were found after the fire on both the front and rumble seat floor mats of the defendant's car.

The record is long and full of details which need not be fully elaborated here. Enough has been said, however, to indicate that the evidence, although circumstantial, (see 16 C. J. *p.* 762; 20 Am. Jur., Evidence, *s.* 273, *State* v. *Thorp*, 86 N. H. 501, 510; *Ballas* v. *Company*, 90 N. H. 428; is sufficient to warrant the finding by the jury of the defendant's guilt beyond a reasonable doubt.

Her specific contentions with respect to it will next be briefly considered.

There was evidence that some of the defendant's personal property was missing after the fire. She contends that this was stolen and her house fired by the marauder to conceal his theft. The jury might have adopted this view, but, from the evidence that the missing property had fully as much sentimental value to the defendant as actual value to a thief, they might equally well conclude that the defendant herself removed this property to save it from the fire she was about to set.

She further contends that the fire of September 22d and those of the 24th were so similar that the only possible conclusion is that they must have been set by the same person and so the verdict of not guilty returned upon the indictment for the first fire is inconsistent with the verdicts of guilty returned upon those for the two later ones. Again, this is a possible view which the jury might have taken, but it is not one compelled as a matter of law. Furthermore, the verdict of not guilty with respect to the first fire does not necessarily indicate a finding by the jury that she did not set it. It may only reflect a finding that the State had failed to prove that she did beyond a reasonable doubt.

The evidence of the defendant's good character, patriotic and charitable activities, and good family background, the evidence that her property with its improvements was worth the amount of the insurance carried upon it, and the further evidence of the substantial value, both sentimental and actual, of the defendant's personal property in the house at the time of the fires, while tending to show her lack of guilt, is insufficient to compel as a matter of law the issuance of an order for her discharge. Her other contentions with respect to the facts, particularly her contention that considering the time when she left Manchester on the night of September 24th and the condition of the highways at that time she could not have reached Sandwich in season to have set the fires which occurred on that date, have been covered earlier in this opinion.

The defendant excepted to a ruling of the court admitting evidence

that her property was overinsured and to the statement made in the opening that such evidence would later be introduced. While motive need not be shown, it may be, and the admissibility of evidence of overinsurance to show a motive for burning one's buildings is supported by both reason and authority. State v. Dearborn, 59 N. H. 348. See also, State v. Slocinski, 89 N. H. 262. The contention that the opening statement on behalf of the State was argumentative in form was not made at the trial but advanced for the first time in argument before us. Under principles too familiar to call for the citation of authorities, this question is not before us for consideration.

The same consideration applies to the defendant's present contention that the testimony of the sheriff of Carroll County as to the value of her property was wrongfully admitted, not because of his failure to qualify as an expert, but solely because of the office which he held, and to her further complaints that the court interrogated witnesses and upon two occasions held sessions of court in the evening. Even if properly before us, however, the result would be the same. The purpose of the questions asked by the court was only to elucidate matters in the testimony of witnesses and the court's feelings upon the merits of the case were in no way betrayed. Even if properly objected and excepted to there was no error in asking them. State v. Davis, 83 N. H. 435. Neither do we see any error in permitting a sheriff to testify as an expert, or find any authority suggesting any error in so doing, or in holding sessions of court in the evening, if in the discretion of the court below it was expedient to do so.

*Exceptions overruled.*

All concurred.