[No. 5685.]

## Brennan v. The People.

**1. Practice in Criminal Cases—Statutory Construction—Drunkenness No Excuse for Crime.**

Section 1164 of Mills' Ann. Stats., providing that voluntary drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person, is but declaratory of the common law, where it is uniformly held that drunkenness is not an excuse for crime; yet all the cases hold that when a particular intent forms the gist of the offense, as contradistinguished from the intent necessarily entering into every crime, and is made to depend on the state and condition of the mind of the accused at the time, and with reference to the acts done and committed, drunkenness as a fact affecting the control of the mind is proper for the consideration of the jury in determining whether the accused was capable of entertaining the positive and particular intent requisite to make out the offense.—P. 261.

**2. Practice in Criminal Cases—Statutory Construction—Homicide—Degrees of Murder—Premeditation and Deliberation —Drunkenness Material as to Intent.**

Section 1176 of 3 Mills' (Rev.) Stats., provides that all murder which shall be perpetrated by means of poison or lying in wait, or by any kind of willful, deliberate and premeditated killing, shall be deemed murder of the first degree, and all other kind of murder shall be deemed murder of the second degree. Held, that as the degree of the offense depends entirely upon the question of whether the killing was willful, deliberate and premeditated, that upon such question it becomes a material and necessary subject of consideration by the jury whether the accused was in such a condition of mind by reason of drunkenness or otherwise as to be capable of deliberation and premeditation. —P. 262.

**3. Practice in Criminal Cases—Homicide—Voluntary Drunkenness—Evidence—Instructions.**

In a trial for murder, where evidence of voluntary drunkenness was introduced by the defendant, it was reversible error for the court to give an instruction in the language of § 1164, Mills' Ann. Stats., that drunkenness shall not be an excuse for crime, without also giving an instruction that drunkenness in such case might be considered by the jury for the purpose of determining whether the accused was capable of forming a willful, deliberate and premeditated design to take life.—P. 263.

4. **Practice in Criminal Cases—Homicide—Voluntary Drunken-ness—Sufficiency of Evidence—Question for Jury.**

Where, in a trial for murder, there was some evidence tend-ing to prove the intoxication of the defendant, it was reversible error for the court not to submit such evidence with proper in-structions to the jury to determine whether the defendant was so intoxicated as to be unable to form the deliberate intent neces-sary to constitute murder in the first degree.—P. 264.

5. **Practice in Criminal Cases—Evidence—Dying Declarations—Grounds of Admission.**

In order to render a dying declaration admissible in evidence, the declarant must, at the time of making the same, be con-scious of pending death, and without hope of recovery; and this may be shown not only by what the injured person said, but by his condition and the nature and extent of his wounds.—P. 264.

6. **Practice in Criminal Cases—Evidence—Dying Declarations—Under Sense of Impending Death—Question for the Court.**

Whether from all the circumstances under which a dying declaration was made it satisfactorily appears that it was made under a sense of impending death, is a question exclusively for the court.—P. 264.

*Error to the District Court of Lake County.*
*Hon. Frank W. Owers, Judge.*

Patrick Brennan was convicted of murder in the first degree, and brings error.        *Reversed.*

Mr. JOHN EWING and Mr. GEORGE F. BURTCH, for plaintiff in error.

Mr. N. C. MILLER, attorney general, Mr. I. B. MELVILLE, assistant attorney general, and Mr. JAS. T. HOGAN, district attorney, for the people.

Mr. JUSTICE GODDARD delivered the opinion of the court:

The plaintiff in error, defendant below, was con-victed of the crime of murder in the first degree. The jury fixed the penalty to be suffered by him at death. A motion for a new trial was overruled, and he was sentenced to be hanged. He brings the case

here for review, and assigns numerous errors upon which he predicates the right to a reversal.

We have found it necessary to consider but two of the questions presented, the pertinency of which will be apparent from a brief statement of the facts of the case. It appears that Mrs. Lowney, the deceased, and Brennan, the defendant, had been friends for about four years. They became acquainted in Butte, Montana. They were engaged to be married. He left Butte in May, 1904, and came to Leadville. She followed in July. He furnished her money to buy a boarding house in Stumptown, a place about five miles from Leadville. He lived with her. They were to be married in the fall. Everything went smoothly for a month or more, when she informed him that she had "another fellow," a Swede, who visited her. He, Brennan, told her if she cared more for this man than she did for him, if she would give him some of the money he had given her he would leave. She told him to "go to the devil." Nothing further occurred until December 25, 1904. On Christmas morning he went down town and bought some presents for Mrs. Lowney and her children. He gives the following version of what occurred after his return: "There was two bottles on the table; I poured out some whiskey and drank; I went out and split her some kindling wood; came back in, and was around the house. She told me Mr. Erickson was back from town; so I said I would go out to Kelly's (a saloon) for awhile. * * * We had some drink; I don't know how much I had. * * * Then I came back in the evening, I think it was about half past four or five; I don't know sure about what time I came back. * * * When I walked in, I went into her room, off the dining room; there was a half-gallon demijohn of whiskey; I took some of it; at

that I laid down on the bed to sleep; I don't remember any more that night until I was at the hospital. * * *. Have no recollection of the shooting. * * * The first I realized what I was said to have done, Father Gibbon told me at the hospital."

There is other evidence tending to show that at the time and soon after the shooting, Brennan was in an intoxicated condition. On the evening of December 25th, Mrs. Lowney, with others, was at the house of Mr. Nelson, attending a party. At about seven or eight o'clock the defendant entered the kitchen, where Mrs. Lowney was, and fired two shots from a revolver, both of which took effect upon her. After the shooting, Brennan went into the street and shot himself in the forehead. Dr. Kahn, who was first called as a witness in behalf of the people, was recalled to testify as to the condition of Brennan when he saw him shortly after the shooting. During his examination, the following occurred:

"Q. What, if anything, unusual or abnormal did you observe in his manner, appearance, condition? A. Well, I found the wound. At first, in the effort to get him in a chair, so that I might examine the wound, he was unable to stand, or even sit, in the chair, apparently an inco-ordination of the muscles; and he was held by either one or two, I don't recall, exactly.

"Q. Did you observe any evidence of intoxication at that time, Dr. Kahn? A. Well, that is what I attributed the inco-ordination to. * * *

"The Court: Is this simply to prove drunkenness?

"Mr. Burtch: Simply to show his condition.

"The Court: Are you going to set up drunkenness?

"Mr. Burtch: Simply the condition.

"The Court: I will not allow you to go on with this examination with the view that you can set up intoxication as a defense."

The court, over the objection of counsel for defendant, gave the following instruction:

No. 18. "The Court instructs the jury that drunkenness shall not be an excuse for any crime or misdemeanor, unless such drunkenness be occasioned by the fraud, contrivance or force of some other person or persons, for the purpose of causing the perpetration of an offense; in which case the person or persons so causing said drunkenness for such malignant purpose shall be considered principal or principals, and suffer the same punishment as would have been inflicted on the person or persons committing the offense, if he, she, or they had been possessed of sound reason and discretion." And refused the following, asked by the defendant:

"Instruction No. 2: The Court instructs the jury that, while it is a general rule of law that voluntary drunkenness is no excuse for a crime perpetrated under its influence, still in cases of this kind, intoxication, if proved, may sometimes be considered by the jury for the purpose of determining whether the accused, at the time of the alleged offense, was capable of forming a wilful, deliberate and premeditated design to take life; and, in this case, although the jury may believe from the evidence, beyond a reasonable doubt, that the defendant killed the deceased, still, if you further believe from the evidence that before and at the time the defendant fired the shot, he was so under the influence of intoxicating drink as to be incapable of forming in his mind a design deliberately and premeditatedly to do the act, then such killing would only be murder in the second degree."

1.   Instruction No. 18 is a copy of section 1164 (Mills' Ann. Stats.) of our Criminal Code, which is simply declaratory of the common law, where it is uniformly held that drunkenness is not an excuse for crime, yet all the cases hold that when a particular intent forms the gist of the offense, as contradistinguished from the intent necessarily entering into every crime, and is made to depend on the state and condition of the mind of the accused at the time, and with reference to the acts done and committed, drunkenness, as a fact affecting the control of the mind, is proper for the consideration of the jury in determining whether the accused was capable of entertaining the positive and particular intent requisite to make out the offense.—*Crosby v. The People,* 137 Ill. 325.

Crosby was indicted for an assault with intent to commit murder. An instruction in the language of their statute, which is identical with ours, was under consideration.   Mr. Justice Shope, speaking for the court, says:

"Drunkenness was, therefore, at common law, as under our own statute, no excuse for crime, but where the nature and essence of the offense is, by law, made to depend upon the state and condition of the mind of the accused at the time, and with reference to the acts done and committed, drunkenness, as a fact, affecting the control of the mind, is proper for the consideration of the jury, for, if the act must be committed with a specific intent, to constitute the crime charged, and the defendant is incapable of forming any intent whatever, the offense has not been committed.   The drunkenness is no excuse for any act done or committed.   The defendant may be punished for the consummated offense, whatever it may be; and the want of mind operates, not by way of excuse for crime committed, but renders the accused incapa-

ble of committing the graver offense. We are of the opinion that the statute has not changed the rule at common law, and that the instruction, as applied to this case, was erroneous.''

Our statute provides: ''All murder which shall be perpetrated by means of poison, or lying in wait, * * * or by any kind of wilful, deliberate and premeditated killing; * * * shall be deemed murder of the first degree, and all other kinds of murder shall be deemed murder of the second degree.'' The degree of the offense, therefore, depends entirely upon the question whether the killing was wilful, deliberate and premeditated, and upon that question it becomes a material and necessary subject of consideration by the jury whether the accused is in such condition of mind by reason of drunkenness or otherwise as to be capable of deliberation and premeditation. This, we think, has been the uniform ruling, not only of the courts of all states having statutes similar to our own, but also of the supreme court of the United States. Among the many authorities to this effect are the following: *Hopt v. The People*, 104 U. S. 631; 17 Am. & Eng. Enc. Law 406, par. 2 and cases cited under note 3; *Whitten v. State*, 115 Ala. 72; *Cook v. State*, 35 Southern 669; *Garner v. State*, 28 Fla. 153; *People v. Belencia*, 21 Cal. 544; *Aszman v. State*, 123 Ind. 347; *State v. Johnson*, 40 Conn. 136; *Rafferty v. People*, 66 Ill. 125; Criminal Law and Procedure (Hughes), § 2424; *State v. Williams*, 122 Ia. 115; *Bartholomew v. People*, 104 Ill. 601; *Jones v. Commonwealth*, 75 Pa. St. 403.

In *Hopt v. The People, supra,* the supreme court of the United States reversed a judgment of conviction of murder of the first degree for refusal of the trial court to give an instruction similar to instruction No. 2, asked in this case. After asserting the

general rule of the common law, that voluntary intox-
ication affords no excuse, justification or extenuation
of a crime committed under its influence, Mr. Jus-
tice Gray said:

"But when a statute establishing different de-
grees of murder requires deliberate premeditation in
order to constitute murder in the first degree, the
question whether the accused is in such a condition
of mind, by reason of drunkenness or otherwise, as
to be capable of deliberate premeditation, necessarily
becomes a material subject of consideration by the
jury."

In *State v. Johnson, supra,* the real question pre-
sented was whether drunkenness as a fact may be
considered by the jury as evidence tending to prove
an essential fact—a deliberate intention to take life.
The court used the following language:

"The prisoner was indicted and on trial for
murder in the first degree.   *   *   *   A *deliberate
intent* to take life is an essential element of that
offense.   The existence of such an intent must be
shown as a fact.   Implied malice is sufficient at com-
mon law to make the offense murder, and under our
statute to make it murder in the second degree; but
to constitute murder in the first degree, actual malice
must be proved.   Upon this question the state of the
prisoner's mind is material.   In behalf of the de-
fense, insanity, intoxication, or any other fact which
tends to prove that the prisoner was incapable of
deliberation, was competent evidence for the jury to
weigh.   Intoxication is admissible in such cases, not
as an excuse for crime, not in mitigation of punish-
ment, but as tending to show that the less and not the
greater offense was in fact committed."

We think the reasoning in the foregoing cases
is logical, and the rule announced sound, and that
the court below committed reversible error in giving

instruction No. 18, and in refusing instruction No. 2. Counsel for the people insist, however, that there was not sufficient evidence of intoxication to establish the mental incapacity of the accused, and, therefore, the error in giving and refusing these instructions was not prejudicial. Suffice it to say that there was evidence tending to prove the fact, and it was for the jury to determine whether the defendant was so intoxicated as to be unable to form the deliberate intent necessary to constitute murder in the first degree. —*Commonwealth v. Hagenlock,* 140 Mass. 125; *Crosby v. The People, supra.*

2. The second assignment is based upon the admission in evidence of the dying declaration of the deceased. In order to render a dying declaration admissible in evidence, the declarant must, at the time of making the same, be conscious of impending death, and without hope of recovery. This may be shown not only by what the injured person said, but by his condition and the nature and extent of his wounds. Whether, from all the circumstances under which the statement was made, it satisfactorily appears that it was made under a sense of impending death, is a question exclusively for the court. We think, considering the statement of Mrs. Lowney, that she believed she was in a dying condition and about to die, and from the mortal nature of her injuries she was aware of the near approach of death, and consequently her statement was made under that sense of impending dissolution that leads to a belief in its truth, and that the court properly admitted it in evidence.

It becomes unnecessary to notice the further assignments, since the judgment must be reversed for the reasons given.

*Reversed and remanded.*