**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jules I. LITTWIN, Defendant-Appellant.
No. 15763.**

United States Court of Appeals
Sixth Circuit.

Nov. 16, 1964.

142

G. Edward Friar, Knoxville, Tenn., William A. Reynolds, Knoxville, Tenn., on brief; Peter W. Hampton, Elizabethton, Tenn., Friar & Reynolds, Knoxville, Tenn., of Counsel, for appellant.

David E. Smith, Asst. U. S. Atty., Knoxville, Tenn., J. H. Reddy, U. S. Atty., Knoxville, Tenn., on brief, for appellee.

Before MILLER and O'SULLIVAN, Circuit Judges, and BROWN, District Judge.

SHACKELFORD MILLER, Jr., Circuit Judge.

The appellant, Jules I. Littwin, was indicted for bribery of an Internal Revenue Agent, in violation of Section 201, Title 18, United States Code. The jury re-

turned a verdict of guilty and the appellant was sentenced to two years in prison, from which judgment this appeal was taken.

Most of the facts are not in dispute. What dispute exists centers around the question whether the appellant was the one who first suggested a payment to the Revenue Agent and thereafter carried through with it, or if it was the Revenue Agent who initially brought up the subject by soliciting a bribe. Appellant contended and testified that the Revenue Agent injected the issue of a bribe into their discussions by the solicitation of it. This issue was determined adversely to the appellant by the jury verdict. In considering the legal questions raised on this appeal, it is sufficient to give the facts as shown by the Government's witnesses.

The Government's evidence showed the following. Sands, an Internal Revenue Agent, was assigned in April 1962 to examine the income tax returns of three corporations in Elizabethton, Tennessee. In connection with that assignment he was contacted by the appellant Littwin, who was a certified public accountant of New York City, and who was representing the three corporations. The parties made an appointment to meet on August 6. On August 6 Littwin came to the Internal Revenue office in Johnson City, Tennessee, met Sands there and the two of them walked to Littwin's motel room in Johnson City where Littwin said he had the books and records of the corporation and where they could be examined. Littwin told Sands that due to the crowded conditions and the distraction of a stranger working in the offices of the corporations and the fact that he preferred no one at Elizabethton to know that the corporations' books were being audited, he preferred to work in his motel room.

Agent Sands and Littwin worked in Littwin's motel room on the afternoon of August 6 and on August 7 and 8. During this examination Sands noticed that certain corporation checks had been deposited to a special fund account, but that there were no withdrawals from that account listed on the records. He asked Littwin for the records. Littwin said, "This is where we are going to have some trouble." He explained to Sands "Anybody can make these garments; all it takes is a little bit of material and a little bit of braid. The whole thing is for selling, and that takes a great deal of money; it takes, you have to spend money to attain clients and keep them." He also told Sands that the New York agents understood this type of business and that usually these expenditures were accepted.

On August 27 Littwin and Sands again discussed the expenditures shown for traveling and entertaining that were unsupported. Sands told Littwin that expenses of this nature were not allowable deductions and Littwin again replied that in New York the agents were aware of the necessity for cash expenditures which were used as part of the business methods to attain and keep the business. Littwin suggested that there should be a mutual satisfactory adjustment and that Sands could benefit personally from a satisfactory agreement. Sands told him that he would go back and research the matter and meet with him the next day. Before he left, Littwin said, "How much and when do you want it and how do you want it handled?" Sands replied, "I told him that I didn't want to talk about it, that we could discuss it the next day."

Sands reported the matter to the Internal Revenue Service office in Johnson City and, at its request, he arranged with Littwin to meet on August 29 instead of August 28. At that meeting Sands and Littwin discussed certain proposed adjustments to the corporations' income tax returns. Littwin said that the corporation officers did not want any adjustment to the unallowable deductions because they, themselves, had traveling and entertaining expenses on their individual returns. Littwin said that he believed that they could reach a satisfactory agreement and asked Sands whether a couple of thousand dollars would be enough. Sands said "Yes."

Thereafter they discussed the details of payment, such as that the bills would be in small denominations and the payment would be made in Johnson City rather than in New York. Littwin and Sands arranged to meet again on September 24.

Sands and Littwin met on September 24 and walked to the John Sevier Hotel. During the discussion at this meeting Sands told Littwin that the matter was causing him worry, that he was afraid of his job, and he did not believe that they should go through with it. However, Littwin reassured him about it and the two walked back from the hotel to Littwin's motel room. Littwin entered the room by himself and, after returning, asked Sands to hand him the little valise that he was carrying, which Sands did. Littwin placed an envelope in it, which contained $2,000.00 in cash. Sands and Littwin separated, and promptly thereafter Littwin was arrested by agents of the Internal Revenue Service.

During the meetings on August 29 and September 24 Sands had hidden on his body an electronic transmitting device, by means of which the conversations between the two were transmitted to a receiving set which was monitored by government agents who were keeping Sands and Littwin under sight and surveillance and who listened to the conversations. At the same time the conversations were recorded by an electronic recording device. The recording was of very poor quality and turned out to be unintelligible when it was reproduced at the trial.

At the start of the trial the District Judge ordered that all witnesses be excluded from the courtroom while other witnesses were testifying. However, several government witnesses, after testifying, returned to the witness room where there were other witnesses waiting to testify. Counsel for appellant moved for a mistrial on the ground that the witnesses who had testified, on returning to the witness room, talked with the prospective witnesses about the questions that were asked and their responses thereto. The Court overruled the mo-

tion, which appellant claims was prejudicial error.

We have recently held in United States v. Bostic, 327 F.2d 983, C.A. 6th, that violation of the rule separating witnesses does not automatically bar a witness from testifying. We held that it is a matter within the sound discretion of the trial judge, who could give consideration to whether the violation was wilful or with the knowledge and consent of government counsel. See also: United States v. Brooks, 303 F.2d 851, 853, C.A.6th, cert. denied, 371 U.S. 889, 83 S.Ct. 184, 9 L.Ed.2d 122. Appellant's evidence on this issue does not show what questions and the responses thereto were discussed by the witnesses after they returned to the witness room. The witness, who testified that such discussion was engaged in, admitted on cross examination that such discussion was general and not specific, such as, was the experience rough or "Did they ask you very much?" The District Judge asked this witness, "Mr. Christensen, did you hear anybody come back in there and say, in effect, that they asked me particular kinds of questions and I gave particular kinds of answers? Or anything of that sort?", to which the witness answered "No, sir." Appellant's attorney was given an opportunity to offer additional testimony, but did not do so. Under the circumstances we find no abuse of discretion on the part of the District Judge in denying appellant's motion for a mistrial.

We find no merit in appellant's contention that the District Judge erred in overruling appellant's motion for judgment of acquittal at the conclusion of all the evidence based on the ground that the evidence showed that the appellant was unlawfully entrapped into committing the bribe. As stated by the Supreme Court in Lopez v. United States, 373 U.S. 427, 434–435, 83 S.Ct. 1381, 10 L.Ed.2d 462, rehearing denied, 375 U.S. 870, 84 S.Ct. 26, 11 L.Ed.2d 99, the defense of entrapment is concerned with the *manufacturing* of crime by law enforcement officers and their agents,

which is far different from the permissible stratagems involved in the detection and prevention of crime. Entrapment exists only when the government agents induce and originate the criminal intent of a defendant. There is no entrapment where the criminal intent is already present, and the agents merely afford the opportunity for the commission of a crime. Sorrells v. United States, 287 U.S. 435, 441–442, 53 S.Ct. 210, 77 L.Ed. 413. If the foregoing evidence on behalf of the Government was believed, as the jury had the right to do, it appears clear that it was the appellant who suggested the payment of a bribe and that Agent Sands merely furnished him the opportunity of carrying it out. The issue was submitted to the jury under instructions which appear to us to be appropriate and to which no objection was made by appellant. Masciale v. United States, 356 U.S. 386, 388, 78 S.Ct. 827, 2 L.Ed.2d 859, rehearing denied, 357 U.S. 933, 78 S.Ct. 1367, 2 L.Ed.2d 1375.

Appellant complains of the use of the electronic transmitting device by Sands and the admission in evidence of incriminating statements heard by other agents by means of it. We are of the opinion that these contentions are fully answered by the opinions of the Supreme Court in On Lee v. United States, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270, rehearing denied, 344 U.S. 848, 73 S.Ct. 5, 97 L.Ed. 659, and Lopez v. United States, supra, 373 U.S. 427, 83 S.Ct. 1381. See also: Rathbun v. United States, 355 U.S. 107, 78 S.Ct. 161, 2 L.Ed.2d 134, rehearing denied, 355 U.S. 925, 78 S.Ct. 363, 2 L.Ed.2d 355; United States v. Finazzo, 288 F.2d 175, 177, C.A.6th, cert. denied, 368 U.S. 837, 82 S.Ct. 37, 7 L.Ed.2d 38; United States v. Miller, 316 F.2d 81, 83, C.A.6th, cert. denied, 375 U.S. 935, 84 S.Ct. 335, 11 L.Ed.2d 267, rehearing denied, 375 U.S. 989, 84 S.Ct. 520, 11 L.Ed. 2d 476.

Appellant also contends that it was error on the part of the District Judge to admit in evidence the tape recording of his conversations with Sands, which was also obtained by use of the electronic transmitting device.

This contention is also answered by the opinion of the Supreme Court in Lopez v. United States, supra, 373 U.S. 427, 432, 83 S.Ct. 1381.

However, the following additional fact was involved in the present case. The District Judge, in overruling the objection to the playing of the tape recording to the jury, agreed with appellant's contention that if any part of it was played to the jury, the appellant was entitled to have all of it played to the jury. It was estimated that the playing of the entire tape would consume about three hours. The quality of the recording was very poor. After listening to it for about 25 minutes the District Judge stopped it and stated that he had not been able to understand what the witness was saying and he would not continue to let it run unless the Attorney General (sic) assured him that the remainder of it was of better quality and could be heard. Although the Attorney General (sic) said that he thought it would get better, he apparently did not give any such assurance. The District Judge then stated to the jury that if any one of them had heard a word, remark or phrase that might affect his decision in any way, to be honest about it and raise his hand. Upon no juror's so indicating, the District Judge, over the objection of the appellant, discontinued the playing of the remainder of the tape to the jury. Appellant contends it was reversible error not to permit the remainder of the tape recording to be played to the jury.

The general rule is that if one party to litigation puts in evidence part of a document, or a correspondence or a conversation, which is detrimental to the opposing party, the latter may introduce the balance of the document, correspondence or conversation in order to explain or rebut the adverse inferences which might arise from the incomplete character of the evidence introduced by his adversary. United States v. Corrigan, 168 F.2d 641, 645, C.A.2nd. But this

rule is subject to the qualification that only the other parts of the document which are relevant and throw light upon the parts already admitted become competent upon its introduction. There is no rule that either the whole document, or no part of it, is competent. United States v. Dennis, 183 F.2d 201, 229–230, C.A.2nd, affirmed, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, rehearing denied, 342 U.S. 842, 72 S.Ct. 20, 96 L.Ed. 636, 355 U.S. 936, 78 S.Ct. 409, 2 L.Ed.2d 419; Camps v. New York City Transit Authority, 261 F.2d 320, 322, C.A.2nd; United States v. Corrigan, supra, 168 F.2d 641, 645, C.A.2nd.

 In objecting to the action of the District Judge, appellant's counsel contended that since some part of the tape had been played to the jury, the tape must be played in its entirety "because of the chance that there would have been a word or a remark or a phrase which might have come to the juror which would affect his ultimate decision." He does not point out even at this late hour what word, remark or phrase in that part of the tape which was played he would like to have explained or rebutted, or what part of the unplayed tape would be relevant or would throw light upon any word, phrase or remark which the jury had heard. The appellant has not shown, that what was excluded was competent under this rule. United States v. Dennis, supra, 183 F.2d 201, 230, C.A.2nd. The objection was based solely upon chance, the likelihood of which was as a practical matter rebutted by the inability of the jury to understand what was played to them.

It must be kept in mind that several government agents heard the conversations between the parties by means of the electronic device as it was simultaneously being tape recorded. Several of these agents, in addition to Sands, testified about what they heard. The evidence of guilt was strong.

The District Judge was confronted with a difficult practical problem, the solution of which called for the exercise of his discretion. United States v. Dennis, supra, 183 F.2d 201, 230, C.A.2nd. Under the circumstances, we are of the opinion that the ruling that the playing of the tape be discontinued was not an abuse of discretion and did not constitute reversible error.

The judgment is affirmed.