546 P.2d 980 (1975)
The PEOPLE of the State of Colorado, Plaintiff-Appellee,
v.
Priestley Cassady FLETCHER, Defendant-Appellant.
No. 74-285.
Colorado Court of Appeals, Div. II.
December 4, 1975.
Rehearing Denied December 26, 1975.
Certiorari Granted March 1, 1976.
*982 J. D. MacFarlane, Atty. Gen., James D. Zimmerman, Sp. Asst. Atty. Gen., Denver, for plaintiff-appellee.
Epstein, Lozow & Preblud, P. C., Gary Lozow, Denver, for defendant-appellant.
Selected for Official Publication.
RULAND, Judge.
Alleging various errors in the conduct of his trial, defendant appeals his conviction by a jury of first degree murder under C. R.S.1963, 40-2-3. We reverse and remand the case for a new trial.

I. The Preliminary Hearing
Defendant first contends that the trial court erred in not conducting a hearing to determine his mental competency prior to the preliminary hearing. The facts relative to this issue may be summarized as follows.
On the day before the preliminary hearing was scheduled, defense counsel filed a motion requesting that defendant's competency be determined prior to the preliminary hearing and alleging that defendant was incompetent to proceed with that hearing. The trial court denied the motion and the preliminary hearing was held as scheduled.
Thereafter new counsel was appointed to represent defendant, a second motion to determine competency was filed, and the trial court appointed a psychiatrist to examine defendant. The trial court then granted another motion by defendant for a competency trial before another judge of the district court and additional psychiatric examination was ordered. After consideration of the evidence presented at the second hearing, the trial court determined that defendant was competent to proceed.
In Schwader v. District Court, 172 Colo. 474, 474 P.2d 607, the Court determined that the right to counsel is a meaningless right unless the defendant has the capacity to confer with his attorney regarding the pending charges and the testimony presented at the preliminary hearing. On this basis the Court held that a defendant is entitled to have a determination made as to his competency prior to a preliminary hearing.
We agree with defendant that the amendments to the competency statutes adopted subsequent to the decision in Schwader do not change the rule announced therein. See C.R.S.1963, 39-8-6; cf. § 16-8-110, C.R.S.1973. However, unless a defendant demonstrates that he was prejudiced by his inability to obtain a competency hearing prior to the preliminary hearing, the denial of such a hearing does not require reversal of a subsequent conviction. See Coleman v. Alabama, 399 U. S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387.
Here, it is not disputed that the trial court ultimately conducted a thorough examination of defendant's competency prior to trial. Also, there is no basis in the record for us to conclude that defendant was incompetent at the time of the preliminary hearing. Under these circumstances, *983 we conclude that defendant was not prejudiced as a result of the trial court's ruling. See Coleman v. Alabama, supra.

II. Exclusion of Evidence
Defendant next contends that the trial court erred in refusing to permit the witness Rosemary Sanders to be called before the jury to testify in response to a subpoena. Discussion of this issue requires a brief summary of the People's case.
The People's theory was that defendant hired Carlos Sanders to murder both Sylvia Sheppard and one Howard Williams in order to eliminate these individuals as witnesses against defendant in another case pending before a federal court. Both individuals were killed in March of 1972 and thereafter Carlos was arrested and charged with the murder of Williams in the Denver District Court. Plea negotiations were entered into in that case as a result of which Carlos, among other things, was allowed to plead guilty to voluntary manslaughter in the Williams case, was granted a suspended sentence in the Williams case, and was promised that no charges would be filed against him in the Sheppard case. In exchange therefor, Carlos agreed to testify in connection with the charge against defendant filed in the Jefferson County District Court for the murder of Sheppard.
In the course of defendant's trial, Carlos testified as to the "contract" with defendant to eliminate Sheppard and Williams, and that he, in effect, kidnapped Sheppard on the night of her demise, but that, after taking her to his home, he was having difficulty making up his mind to complete the execution when his sister Rosemary Sanders, and defendant arrived. According to Carlos' testimony, defendant, Carlos, and Rosemary then took Sheppard to Genesee Park by automobile early in the morning of March 12, 1972, whereupon defendant fired the fatal shot at Sheppard with a pistol and then insisted that Carlos and Rosemary each fire shots into her body.
At the time of defendant's trial, first degree murder charges were pending against Rosemary in the Jefferson County District Court. In his defense, defendant produced an 11 page handwritten statement dated August 8, 1972, addressed "To Whom It May Concern." The statement purports to be signed by Rosemary. Contrary to the testimony of Carlos, the statement indicates that Rosemary hired Carlos to murder Sheppard for the reasons specified in the statement and that the defendant had no knowledge of or involvement in the transaction.
Defendant placed Rosemary under subpoena and in an in camera hearing during the trial, defense counsel was allowed to ask only her name and relationship to Carlos whereupon Rosemary's attorney objected on the basis that the witness would refuse to testify by invoking her Fifth Amendment rights. The court then verified from the witness that she intended not to testify, and defense counsel requested that the witness be sworn to testify before the jury so that the jury would be apprised that she was invoking her Fifth Amendment rights. The trial court declined on the basis that since the prosecution may not place a witness on the stand when the prosecutor knows the witness will invoke the Fifth Amendment, it would be improper to allow the defense to do so. Defendant contends this ruling was error. We agree.
Colorado has adopted the rule followed in most jurisdictions which precludes a prosecutor from placing a witness on the stand when he knows the witness will claim the Fifth Amendment. See De-Gesualdo v. People, 147 Colo. 426, 364 P.2d 374; People v. Scheidt, 182 Colo. 374, 513 P.2d 446. While courts in some jurisdictions have concluded that the defendant must be bound by the same principle, see, e.g., Horner v. State, 508 S.W.2d 371 (Tex.Cr.App.), the law in Colorado is otherwise.
*984 In O'Chiato v. People, 73 Colo. 192, 214 P. 404, the defendant, who was charged with statutory rape, attempted to show by the testimony of a witness that the sexual intercourse described by the prosecutrix's evidence took place with the witness and not with the defendant. In an in camera hearing and after the witness was advised of his Fifth Amendment rights, the witness advised the trial court that he would not answer the questions propounded. Our Supreme Court held:
"It was also error to refuse to permit the question to be asked in the presence of the jury. The defendant had the right to a trial by jury, and to compel the attendance of witnesses in his behalf. The right to a trial by jury includes the right to have the jury present when competent questions are propounded to a witness. While a witness may refuse to answer if the answer would tend to incriminate him, yet the privilege does not bar the asking of the question."
We therefore conclude that the trial court committed reversible error in refusing to permit the witness to be sworn to testify before the jury.
We also note that upon retrial, the witness may only invoke the Fifth Amendment after the questions are asked and not before. In People v. Austin, 159 Colo. 445, 412 P.2d 425, our Supreme Court stated:
"It is well settled that the privilege against self-incrimination may not be asserted in advance of the questions actually propounded.... The proper procedure is to wait until a question which tends to be incriminating has been asked and then decline to answer. Otherwise the privilege is normally waived when the question is answered."
This procedure allows the trial court to determine whether the privilege is properly invoked as to each question.
Since the case must be retried, we discuss other issues raised by defendant which are likely to arise again in the second trial.

III. Admissibility of the Written Statement
After the trial court refused to have Rosemary sworn to testify before the jury, defense counsel sought to introduce the written statement. In an offer of proof, defense counsel indicated that a handwriting expert was available who would testify that the handwriting in the statement was, in fact, Rosemary's. Defense counsel contended that the statement was admissible under an exception to the hearsay rule as a declaration against the penal interest of the witness. The trial court ruled that the statement was inadmissible on the basis that it was not a statement against penal interest and that it appeared to be unreliable. The People, in effect, concede that Rosemary's statement constitutes a declaration against her penal interest, but assert that the trial court did not err in excluding the written statement in this trial. We agree though the statement may be admissible on retrial.
In Moya v. People, 79 Colo. 104, 244 P. 69, on the basis of a desire to observe comity, our Supreme Court applied the rule announced in Donnelly v. United States, 228 U.S. 243, 33 S.Ct. 449, 57 L.Ed. 820, to the effect that hearsay statements against penal interest by an individual not available to testify were inadmissible.
In Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297, a witness was called by the defense who had previously confessed the murder (orally and in writing) with which defendant was charged. The witness testified that his confession was false and had been made after he was assured he would not go to jail. While the written confession was introduced in evidence, the trial court precluded defense counsel from cross-examining the witness or presenting testimony as to the oral confessions. The Supreme *985 Court held that since there was considerable assurance that the oral confessions were reliable, the procedure followed by the trial court violated fundamental due process and required a new trial wherein cross-examination and the testimony of the oral confessions must be admitted.
The indicia of trustworthiness in Chambers consisted of: (1) The fact that each of the witnesses' oral confessions was made spontaneously to a friend shortly after the crime was committed; (2) other evidence was admitted which corroborated the oral confessions such as the written confession and other testimony relative to the witnesses' activities at the scene of the crime; (3) the number of confessions made by the witness; and (4) the fact that the confessions were "unquestionably against interest." Finally, unlike Donnelly, in Chambers the witness who confessed the crime was available for examination.
While it appears that the strict rule in Donnelly has been modified by Chambers, and that under the rule of comity stated in Moya, Chambers is controlling, we agree with the People that Rosemary's statement was not admissible at this trial under the rule of Chambers. Although this 11-page detailed handwritten statement furnishes some indicia of trustworthiness and although the statement is "unquestionably against interest," Rosemary asserted that she would invoke her Fifth Amendment rights in order to avoid testifying, and there was no offer of proof made by the defense to corroborate by other evidence any factual recitation in the statement.
The parties agree that following the defendant's trial the first degree murder charges against Rosemary were dismissed. However, we have no basis for concluding that the witness will agree to waive her Fifth Amendment rights and testify upon retrial. Hence, absent independent evidence corroborating the truth of the written statement, it should not be admitted upon retrial.

IV. Evidence of Other Crimes
Citing the rule announced in Stull v. People, 140 Colo. 278, 344 P.2d 455, defendant contends that the jury was not given a proper cautionary instruction as to the admissibility of evidence of other crimes.
The necessity for such instruction assertedly resulted from certain testimony elicited from Carlos relative to discussions with defendant concerning the "contract" and the subsequent killing of Williams. In eliciting that testimony, the district attorney initially advised the court that it was offered as part of the "same scheme, motive, design and plan." Later in an in camera hearing, he advised the court that it was interrelated to the crime charged. Nevertheless, he consented to the giving of a cautionary instruction.
Following the giving of the first cautionary instruction, Carlos testified regarding the "contract" to eliminate Sheppard and Williams. Then, after describing the murder of Sheppard, another in camera hearing was held relative to testimony the district attorney proposed to offer from Carlos regarding the charges filed for the murder of Williams and the plea bargain negotiated relative thereto.
Defense counsel again insisted that a cautionary instruction was necessary, the trial court agreed, but defendant objected to the wording of this instruction. Nevertheless, the witness was allowed to testify that he murdered Williams shortly after Sheppard was killed by defendant, and in conjunction with the charges filed for the murder of Williams, the witness described the plea bargain.
While the second cautionary instruction may be objectionable under Stull because of its use of the term "crimes" in the instruction in lieu of terms such as "other transactions" or "other acts," we conclude that such error was harmless. Testimony by the witness as to the "contract" discussions with defendant was admissible as part of the entire criminal transaction and *986 an instruction under Stull was not required. See People v. Anderson, Colo., 518 P.2d 828; Dickerson v. People, 179 Colo. 146, 499 P.2d 1196. Testimony that the witness killed Williams pursuant to the contract was proper as part of the foundation for establishing the charges against the witness which resulted in the plea bargain and thus the agreement of the witness to testify in this case. Hence, an instruction under Stull also was not required as to this testimony.

V. Prior Consistent Statements
Defendant contends that testimony admitted in the People's case to show that the testimony of Carlos was consistent with prior statements by the witness to his defense attorney and other police officers should not have been admitted. While acknowledging that contemporaneous objections were not made during trial, he contends that the admission of this evidence was plain error. We disagree that the admission of this testimony under the circumstances of this case was plain error. Crim.P. 52; see People v. Barker, 180 Colo. 28, 501 P.2d 1041. Upon retrial, however, evidence of prior consistent statements may be used only to rebut prior inconsistent statements. See Coates v. People, 106 Colo. 483, 106 P.2d 354; see also § XX-XX-XXX, C.R.S.1973.

VI. Flight Instruction
Defendant objects to an instruction which advised the jury:
"If you find from the evidence beyond a reasonable doubt that the crime charged in the Information was committed by some person, and that immediately after such crime was committed the defendant fled, such flight would be a circumstance, not sufficient in itself to establish the guilt of the defendant, but a circumstance which you may consider, in connection with all the other facts and circumstances proven at the trial, in determining the question of the guilt or innocence of the defendant. It is for you to determine from the evidence whether such flight was caused by a consciousness of guilt or by some other and innocent motive." (emphasis supplied)
The People concede that "it would have been better if the trial court had not given the flight instruction," and we conclude the instruction was improper.
Sylvia Sheppard was killed on March 25, 1972. Carlos was incarcerated in April 1972, but a warrant for defendant's arrest was not issued until August 1972. There was no evidence that defendant had knowledge of Carlos' arrest or subsequent statements to the police concerning this case.
In August police officers visited certain locations in Denver in an unsuccessful attempt to locate the defendant. Then in April of 1973, (approximately 13 months after the alleged murder), the defendant was apprehended in New Jersey using an assumed name.
In Robinson v. People, 114 Colo. 381, 165 P.2d 763, our Supreme Court noted the flight instruction "is rarely advisable and should never be given unless the peculiar facts of the case appear to make it essential." This statement of the rule was recently approved in People v. Morant, 179 Colo. 287, 499 P.2d 1173. Where, as here, there is no evidence of flight "immediately after" the crime was committed, the instruction was improper.

VII. Accomplice Instruction
Defendant contends that the trial court erred in submitting the following instruction to the jury over the objection of counsel:
"In any prosecution for an offense in which another person may be an accomplice, it is no defense that such other person or accomplice has not been prosecuted for or convicted of any offense based upon the behavior in question."
The principal objection to this instruction is that it does not contain the term *987 "alleged" before the term "accomplice." Specifically, defendant contends that the instruction suggests that Carlos was, in fact, an accomplice and that, therefore, this instruction invaded the province of the jury. We disagree.
We conclude that use of the phrase "may be an accomplice" eliminates the necessity of inserting the word "alleged." Under such interpretation, the instruction properly states the law, see § 18-1-605, C. R.S.1973, and we find no error in the giving of this instruction here.
Since this case must be retried, defendant's other contentions of error become moot.
Judgment reversed and cause remanded for a new trial.
SMITH and KELLY, JJ., concur.