## No. 28262

## The People of the State of Colorado v. Michael Thomas DelGuidice
(606 P.2d 840)

Decided December 24, 1979.                Rehearing denied March 10, 1980.

J. D. MacFarlane, Attorney General, Richard F. Hennessey, Deputy, Edward G. Donovan, Solicitor General, David K. Rees, Assistant Attorney General, for plaintiff-appellee.

Stephen C. Rench, for defendant-appellant.

*En Banc.*

JUSTICE ROVIRA delivered the opinion of the Court.

Michael DelGuidice (the defendant) appeals a jury verdict convicting him of second-degree murder.[1] We affirm the conviction.

On September 7, 1977, the defendant left an Aurora bar where he had been drinking. He walked past an apartment house and saw a motorcycle parked in a fenced area. He took the motorcycle and pushed it into the street. The defendant had been observed by a bystander, who alerted residents of the apartment house, including the victim in this case. The victim and several other persons pursued the defendant and overtook him. A confrontation occurred, during which the defendant killed the victim with a knife.

The defendant was arrested and charged with first-degree murder.[2] The jury was instructed on that offense as well as the included offenses of

---

[1] The defendant was convicted pursuant to section 18-3-103(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), which states that "A person commits the crime of murder in the second degree if . . . [h]e causes the death of a person knowingly . . . ."

[2] Section 18-3-102, C.R.S. 1973 (1978 Repl. Vol. 8).

second-degree murder, manslaughter,[3] and criminally negligent homicide.[4]

This appeal raises the following issues: (1) whether the second-degree murder statute is constitutionally distinguishable from the manslaughter statute; (2) whether the trial court erred in instructing the jury that the affirmative defense of voluntary intoxication was available only to the charge of first-degree murder; and (3) whether the trial court erred in denying a defense request that a tape recording of a statement made by the defendant be played at trial, in its entirety, for the purpose of rehabilitating the defendant's testimony.

## I.

The defendant contends that his conviction under the second-degree murder statute violates his right to equal protection of the law because that statute is indistinguishable from the manslaughter statute. We disagree.

The pertinent distinction between the two statutes is that between the *mens rea* elements "knowingly" and "recklessly." These terms are defined, respectively, in sections 18-1-501(6) and 18-1-501(8), C.R.S. 1973 (1978 Repl. Vol. 8), as follows:

"A person acts 'knowingly' . . . with respect to conduct or to a circumstance described by a statute defining an offense when he is aware that his conduct is of such nature or that such circumstance exists. A person acts 'knowingly' . . . with respect to a result of his conduct, when he is aware that his conduct is practically certain to cause the result."

"A person acts recklessly when he consciously disregards a substantial and unjustifiable risk that a result will occur or that a circumstance exists."

The defendant relies on the rule established in *People v. Calvaresi,* 188 Colo. 277, 281, 534 P.2d 316, 318 (1975), that "where two statutes with unequal penalties proscribe the same act, the defendant convicted under the harsher statute is denied equal protection of the law." However, if the two statutes in question require different *mens rea* elements for conviction, there is no equal protection violation under *Calvaresi, supra. People v. Reynolds,* 195 Colo. 386, 575 P.2d 1286 (1978).

The distinction between the *mens rea* elements "knowingly" and "recklessly" mirrors the distinction between practically certain of result on the one hand, and probability or contingency of result on the other. *People v. Mingo,* 196 Colo. 315, 584 P.2d 632 (1978); *Model Penal Code* § 2.02, Comment (Tent. Draft No. 4, 1955), at 125. This distinction is one of broad degree, and its articulation is fully satisfactory only when grounded in specific facts. However, we cannot say that the distinction is not "sufficiently apparent to be intelligently and uniformly applied"

---

[3] Section 18-3-104(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8).
[4] Section 18-3-105(1), C.R.S. 1973 (1978 Repl. Vol. 8).

when examined from the perspective of likely impact on a jury in a criminal trial. *Calvaresi, supra,* 188 Colo. at 282, 534 P.2d at 318; *People v. Favors,* 192 Colo. 136, 556 P.2d 72 (1976).

In the case before us, eyewitnesses to the homicide testified that the defendant and the victim engaged in a face-to-face confrontation and that the defendant made a sudden move toward the victim, stabbing with his knife directly into the victim's heart. The jury could properly conclude on the basis of this evidence that the defendant was aware that the death of the victim was "more than merely a probable result" of his actions. That level of awareness is sufficient to establish the *mens rea* element of second-degree murder and to distinguish that crime from manslaughter. *Mingo, supra,* 196 Colo. at _____, 584 P.2d at 633.

We therefore hold that the second-degree murder statute, section 18-3-103(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), is constitutionally distinguishable from the manslaughter statute, section 18-3-104(1)(a), C.R.S. 1973 (1978 Repl. Vol. 8), within the rule of *Calvaresi, supra.*

## II.

The second issue raised in this appeal concerns the affirmative defense of voluntary intoxication. The trial court instructed the jury that the defense was available only to the charge of first-degree murder. The defendant challenges this instruction as a denial of due process of law.[5]

The defendant points out that evidence of his voluntary intoxication was presented to the jury but that the trial court's instruction precluded the jury from considering that evidence as a defense to the charge of second-degree murder and, specifically, on the issue of whether the defendant acted "knowingly" in causing the death of the victim. The defendant concludes that the instruction lessens the People's burden of proving him guilty, beyond a reasonable doubt, of every element of the crime charged and therefore constitutes a denial of due process of law and cites *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970, and *People v. Kanan,* 186 Colo. 255, 526 P.2d 1339 (1974), in support of his argument.[6]

We note initially that the trial court's instruction conforms with applicable provisions of the Colorado Criminal Code. Second-degree murder, because it contains the *mens rea* element "knowingly," is a general intent crime. Section 18-1-501(6), C.R.S. 1973 (1978 Repl. Vol. 8); *People v. Washburn,* 197 Colo. 419, _____, 593 P.2d 962, 965 (1979). However,

---

[5] The defendant does not specify whether the due process challenge is grounded on the due process clause of the Fourteenth Amendment to the United States Constitution (*U.S. Const.* amend. XIV) or on the due process clause of the Colorado Constitution (*Colo. Const.* Art. II, Sec. 25). Our analysis is equally applicable to either constitutional provision.

[6] The defendant also cites *People v. Campbell,* 196 Colo. 390, 589 P.2d 1360 (1978), relying on that opinion as announced by this court on October 23, 1978. However, on December 11, 1978, we modified the *Campbell* opinion, and, as so modified, it is not relevant to the issue before us.

section 18-1-804(1), C.R.S. 1973 (now in 1978 Repl. Vol. 8), limits the defense of voluntary intoxication to the negation of *mens rea* in specific intent crimes. Finally, section 18-3-103(2), C.R.S. 1973 (1978 Repl. Vol. 8), provides specifically that "[d]iminished responsibility due . . . to self-induced intoxication is not a defense to murder in the second degree."

The trial court's instruction also conforms with the long-standing common law rule that "[v]oluntary drunkenness is no legal excuse for a crime perpetrated under the influence of intoxicating liquor unless its effect is to destroy the ability of the accused to form a specific intent, the existence of which is an element of the offense charged." *Smith v. People,* 120 Colo. 39, 47, 206 P.2d 826, 830 (1949). See also *Dolan v. People,* 168 Colo. 19, 449 P.2d 828 (1969); *Watkins v. People,* 158 Colo. 485, 408 P.2d 425 (1965); *Brennan v. People,* 37 Colo. 256, 86 P. 79 (1906). This rule is followed in the federal courts and is embodied in the statutes of at least twenty states. *Kane v. United States,* 399 F.2d 730 (9th Cir. 1969), *cert. denied,* 393 U.S. 1057, 89 S.Ct. 698 (1969); *Model Penal Code* § 2.08, Comment (Tent. Draft No. 9, 1959), at 2.

Our research indicates that the precise issue raised in this appeal is one of first impression in this state. Authorities such as *In re Winship* and *People v. Kanan, supra,* do not decide the issue, but rather reaffirm the principle that the prosecution must adhere to the standard of proof beyond a reasonable doubt, rather than a lesser standard, in overcoming the presumption of innocence of the accused in a criminal case.

■ This court has indicated that evidence of voluntary intoxication is competent, as a matter of due process, to disprove specific intent when that mental state is an element of a crime charged. *People v. Cornelison,* 192 Colo. 337, 559 P.2d 1102 (1977). The holding in *Cornelison,* however, is fully consistent with the common law and statutory rule challenged in this case. *Cornelison* applies only to specific intent crimes and does not mandate a departure from the rule that evidence of voluntary intoxication is incompetent to disprove general rather than specific intent.

The drafters of the Model Penal Code do not address the issue as one of due process analysis. It is true that the official draft of the code makes evidence of voluntary intoxication competent to disprove the mental state "knowingly," excluding such evidence only as to the culpable mental states of recklessness and criminal negligence. However, the Comments to the code indicate that the drafters viewed the question as controlled by policy considerations rather than by the strictures of the due process clause. *Model Penal Code* § 2.08, Comment (Tent. Draft No. 9, 1959), at 8-9.

We approach this issue mindful that the due process clauses of the state and federal constitutions impose on us the duty to make hard choices between competing interests.

It must be noted that *In re Winship, supra,* establishes the requirement of proof beyond a reasonable doubt with specific reference to the context of historical rules of evidence:

"[g]uilt in a criminal case must be proved beyond a reasonable doubt and by evidence confined to that which long experience in the common-law tradition, to some extent embodied in the Constitution, has crystallized into rules of evidence consistent with that standard." 397 U.S. at 362, 90 S.Ct. at 1071, 1072, 25 L.Ed.2d at 374.

■ The Colorado common law and statutory rule which makes evidence of voluntary intoxication incompetent to disprove general intent when that mental state is an element of a criminal charge is supported by weighty policy choices about the extent to which drunkenness can excuse criminal responsibility. The rule is one of long standing and, in our opinion, represents the judgment of the people of this state, speaking through their legislature, as to the extent to which voluntary intoxication may be a defense in homicide cases. This is clearly within the competence of the legislature. The principle established in *In re Winship, supra,* cannot be syllogistically applied in a manner which abrogates the policy choices inherent in the rule. We therefore hold that the trial court did not err in instructing the jury that it could consider evidence of the defendant's voluntary intoxication only on the charge of first-degree murder.

### III.

■ The defendant's third argument is that the trial court erred in denying his request that an entire tape recording of a statement made by him after his arrest be played at trial for the purpose of rehabilitation of testimony. We hold that the trial court did not err in denying the defendant's request.

The defendant took the stand and stated on direct examination that the victim had struck him immediately prior to the stabbing. On cross-examination, the defendant stated that certain scrape marks on his face had been caused by the blows struck by the victim. The prosecutor impeached the defendant's testimony about the cause of the scrape marks by referring to a portion of a statement made by the defendant to Detective Aaro after the arrest, to the effect that the scrape marks had been caused by a third party *after* the stabbing. On redirect examination, the defendant's counsel requested that a tape recording of that statement be played for the jury in its entirety, arguing that the recording would rehabilitate the defendant's direct testimony. The prosecutor objected, and the request was denied. However, the prosecutor stipulated that he would not object to the recalling of Detective Aaro to testify as to the defendant's statement about the blows struck by the victim. The detective was recalled and testified that the defendant had stated that he had been struck by the victim. The trial court also indicated that the defendant could be further examined by his counsel about his statement to the detective. However,

defense counsel chose not to exercise this opportunity.

The defendant is correct in his assertion that evidence of his prior consistent statement was admissible for the purpose of rehabilitating his direct testimony after that testimony had been impeached by evidence of a prior inconsistent statement. *Coates v. People,* 106 Colo. 483, 106 P.2d 354 (1940); *People v. Fletcher,* 37 Colo. App. 173, 546 P.2d 980 (1975). *Cf.* Fed. R. Evid. 801(d)(1)(B). The trial court complied with this rule by giving defense counsel a full opportunity, exercised only in part, to introduce evidence of the prior consistent statement through the testimony of the defendant and Detective Aaro.

However, the defendant is incorrect in contending that the entire tape recording of his statement should have been admitted under the rule providing limited admissibility for a witness' prior consistent statements. The defendant made no showing that the recorded statement, other than the portion about which Detective Aaro was allowed to testify, was relevant to rebut the prior inconsistent statement used by the prosecution for impeachment purposes. The defendant does not argue that the detective's testimony was insufficient to place the relevant portions of the recorded material before the jury.

"[T]here is no rule which permits a party to introduce all portions of a document merely because the opponent has employed some portion of it to impeach a witness . . . . The 'rule of completeness,' which does permit the further use of the document to explain the portion already in evidence as fully as the document may allow, does not extend to portions which are irrelevant to the initial use."

*Camps v. New York City Transit Authority,* 261 F.2d 320, 322 (2d Cir. 1958). *See also United States v. Littwin,* 338 F.2d 141 (6th Cir. 1964); *McCune v. People,* 179 Colo. 262, 499 P.2d 1184 (1972); *Gallegos v. People,* 157 Colo. 484, 403 P.2d 864 (1965); *E. Cleary, McCormick's Handbook on the Law of Evidence* § 56 at 131 (2d ed. 1972).

We have considered all other arguments presented by the defendant and find them to be without merit.

Judgment affirmed.

JUSTICE ERICKSON, JUSTICE DUBOFSKY and JUSTICE LOHR dissent.

JUSTICE ERICKSON dissenting:

I respectfully dissent.

*In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969), stands for the proposition that the Due Process Clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every

fact necessary to constitute the crime with which he is charged." A conviction of murder in the second-degree must be supported by a showing that the defendant's acts were committed "knowingly," by proof beyond reasonable doubt. By depriving a defendant of the right to introduce relevant and exculpatory evidence pertaining to his mental state (*i.e.*, that he was intoxicated and did not act knowingly), the majority deprives the defendant of his right "to require proof beyond a reasonable doubt of every element of the crime charged." *People v. Cornelison*, 192 Colo. 337, 559 P.2d 1102 (1977).

Second-degree murder is defined by the provisions of section 18-3-103, C.R.S. 1973 (1978 Repl. Vol. 8):

"Murder in the second degree. (1) A person commits the crime of murder in the second degree if:

"(a) He causes the death of a person knowingly, but not after deliberation.

"(2) Diminished responsibility due to lack of mental capacity or self-induced intoxication is not a defense to murder in the second degree."

It is clear that the impaired mental condition statute cannot be interposed as a defense against a charge of second-degree murder. The defense authorized by that statute is by its terms only available when a defendant is charged with a specific intent crime. Second-degree murder is a general intent crime. Section 18-1-501(6), C.R.S. 1973 (1978 Repl. Vol. 8). *People v. Mingo*, 196 Colo. 315, 584 P.2d 632 (1978).

The predecessor to the present second-degree murder statute was before us in *People v. Cornelison*, 192 Colo. 337, 559 P.2d 1102 (1977). The statute then provided that:

"(1) A person commits the crime of murder in the second degree if:

"(a) He causes the death of a person intentionally, but without premeditation . . . .

"(2) Diminished responsibility due to lack of mental capacity is not a defense to murder in the second degree." Section 18-3-103, C.R.S. 1973.

The defendant in *People v. Cornelison, supra,* attempted to offer evidence to prove that his self-induced intoxication prevented him from forming the then requisite specific intent to commit second-degree murder. We held that he was entitled to introduce evidence of intoxication:

"We construe section 18-3-103(2) to mean that diminished responsibility due to lack of mental capacity is not a defense, unless it precludes a defendant from entertaining the requisite specific intent to commit the crime of second-degree murder. The absence of specific intent, like the absence of any other element of the crime, mandates an acquittal. And under section 18-1-804(1) a defendant's voluntary intoxication may be evidence of his inability to entertain the specific intent required for conviction of second-degree murder.

"To hold otherwise would effectively relieve the People of the burden of proving every essential element of the charge beyond a reasonable doubt. As the Supreme Court of Pennsylvania observed in *Commonwealth v. Graves,* 461 Pa. 118, 334 A.2d 661:

"'It would clearly be an anomaly to suggest that although the Commonwealth must establish the existence of a mental state beyond a reasonable doubt, and that failure to sustain that burden requires an acquittal; yet preclude the defendant from producing relevant evidence to contest the issue.'

"More than an anomaly, such a holding would deprive defendant of his right, secured by the due process clause, to require proof beyond a reasonable doubt of every element of the crime charged. *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368. *See People v. Kanan,* 186 Colo. 255, 526 P.2d 1339." *People v. Cornelison, supra.*

After our decision in *Cornelison,* the second-degree murder statute, section 18-3-103 was amended by the legislature. The culpable mental state required for conviction was changed by the legislature from "intentionally" to "knowingly." In my view, however, subsection (2) of that statute, as amended, still violates the Due Process Clause of the Fourteenth Amendment because the defendant is foreclosed from introducing evidence that his diminished responsibility resulting from the lack of mental capacity rendered him unable to form the requisite culpable mental state knowingly to commit the crime of second-degree murder.

The majority asserts that the statute barring evidence of intoxication are founded in the common-law tradition that evidence of voluntary intoxication cannot be used to negate a general intent crime. Although the legislature has declared second-degree murder to be a general intent crime, the addition of the element "knowingly," in my view, has removed second-degree murder from the common law realm of general intent crimes and has placed it in the class of crimes contemplated in *Cornelison.*

Under the common law, there are two broad classes of crime, each reflecting a different conception of the mental state required for conviction. The largest class of crimes are general intent crimes. To prove that a general intent crime has been committed, the prosecution has traditionally been required to show only that the defendant performed a voluntary act, and that he had the mental capacity to do so. *See* Remington and Helstad, *The Mental Element in Crime — A Legislative Problem,* 1952 Wis. L. Rev. 645. In that context, general intent means only that the defendant voluntarily intended to do the act which led to his prosecution.

The second class of offenses at common law is comprised of specific intent crimes. In addition to those elements which will serve for conviction of a general intent crime, a "special mental element" such as premeditation must be proved, when a specific intent crime is charged. *See Perkins on Criminal Law* (2d ed. 1969).

Whenever proof of a special mental element has been required for conviction, defendants have been allowed to introduce evidence on the question of whether they were capable of acting with the special mental state required. *See Model Penal Code, Tentative Draft No. 9,* pp. 7-8 (1962). Evidence of diminished capacity or self-induced intoxication has traditionally been admissible to negative the defendant's ability to entertain the requisite mental state. We held in *People v. Cornelison, supra,* that *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969), elevated a defendant's right to introduce evidence on that special mental element to a constitutional level.

The legislative definition of the word "knowingly" is substantially the same as the definition given that word in the Model Penal Code § 2.02:

"(b) Knowingly. A person acts knowingly with respect to a material element of an offense when:

"(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist;

and

"(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result."

Section 2.08 of the model code sets out those crimes in which intoxication shall be a defense. That section makes the defense of intoxication available to any defendant who is charged with a crime which requires proof that the defendant acted "knowingly." The comments to section 2.08 and section 2.02 make it abundantly clear that the American Law Institute intended that defendants be allowed to negate an allegation of knowing conduct by the introduction of evidence of diminished capacity due to voluntary intoxication:

"The first . . . question [is] whether intoxication ought to be accorded a significance that is entirely co-extensive with its relevance to disprove purpose or knowledge, when they are the requisite mental elements of a specific crime. We submit that the answer clearly ought to be affirmative; that when the definition of a crime or a degree thereof requires proof of such a state of mind, the legal policy involved will almost certainly obtain whether or not the absence of purpose or knowledge is due to the actor's self-induced intoxication or to some other cause. For when purpose or knowledge, as distinguished from recklessness, is made essential for conviction, the reason very surely is that in the absence of such states of mind the conduct involved does not present a comparable danger, as in burglary or theft; or that the actor is not deemed to present as significant a threat, as in treason and perhaps the first degree of murder; or, finally, that the ends of legal policy are served by bringing to book or subjecting to graver sanctions those who consciously defy the legal norm."

*Model Penal Code, Tentative Draft No. 9,* p. 7 (1962).

Accordingly, it is my view that the General Assembly's efforts to bar the introduction of evidence on voluntarily-induced intoxication for second-degree murder does not comport with the Due Process requirements of proof beyond a reasonable doubt. For that reason I would reverse the judgment of the district court.

JUSTICE DUBOFSKY and JUSTICE LOHR join me in this dissent.